# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE HONEY TRANSSHIPPING | ) | Judge Joan B. Gottschall |
| LITIGATION | ) | |
| | ) | Case No. 13-cv-2905 |
| | ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

This consolidated matter consists of a class action and a parallel individual action (filed by members of the class who intend to opt out) against certain importers and suppliers of commercial honey. The class plaintiffs bring suit for alleged violations of the Lanham Act, 15 U.S.C. § 1125, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, ("RICO") against several defendants. Only a few defendants, however, are relevant at this stage of the litigation: (1) Honey Holding I, Ltd. d/b/a Honey Solutions ("Honey Solutions"), HHI Management ("HHI"), and Douglas A. Murphy (collectively, the "Honey Solutions defendants"); and (2) Sunland Trading, Inc. ("Sunland"). The individual plaintiffs have sued many of the same defendants, including the Honey Solutions defendants, but not Sunland.[1] The individual plaintiffs' complaint also differs from the class complaint in the types of claims raised: the individual plaintiffs' complaint asserts claims arising under RICO and the Illinois common law, but not under the Lanham Act.

Now before the court are three motions to dismiss: (1) Sunland's motion to dismiss the class complaint; (2) the Honey Solutions defendants' motion to dismiss the class complaint; and (3) the Honey Solutions defendants' motion to dismiss the individual plaintiffs' complaint. For

---

[1] The court only addresses the allegations made against the Honey Solutions defendants and Sunland because these are the defendants who have pending motions to dismiss.

the reasons set forth herein, Sunland's motion to dismiss is granted, and the Honey Solutions defendants' motions to dismiss are granted in part and denied in part.

## I.  BACKGROUND

Both the class complaint and the individual plaintiffs' complaint revolve around an alleged conspiracy to "transship" Chinese honey through intermediate countries into the United States.  The Chinese-made honey arrived in the United States illicitly, under false labels identifying an intermediate country as the country of origin.  The falsified labels enabled the importers to deceive U.S. Customs officials into believing that the honey did not originate from China.  As a result, the importers were able to circumvent the anti-dumping duties that the United States government had imposed on Chinese-produced honey.

Once inside the United States, the Chinese honey—which allegedly contained prohibited antibiotics and other harmful contaminants—passed from importer to packer, packer to supplier, and supplier to commercial end user (which could be a retailer of honey or a producer of products that contain honey).  The transshipping scheme, however, involved only importers and suppliers who knew the true origin of honey and participated in the transshipping process.

Why did the importers and suppliers go to great lengths to sneak Chinese-produced honey into the United States?  Money.  Chinese honey was inexpensive, especially compared to domestically-produced American honey.  By obtaining Chinese honey in bulk and mislabeling it as originating from a country other than China, the participants in the scheme could sell honey in the United States at lower prices than their competitors could.

Both the class plaintiffs and the individual plaintiffs are domestic commercial beekeepers and packers of honey.  They allege that the defendants' transshipping scheme suppressed the

price of honey in the United States. The lower prices, in turn, undermined the plaintiffs' competitiveness in the marketplace and caused the plaintiffs to lose sales and market share.

For brevity's sake, the court will not delve further into the allegations in the two complaints, given that some defendants have settled, and only a few defendants have moved to dismiss. Instead, the court will summarize the pertinent allegations made against the defendants whose motions require ruling.

### A. The Honey Solutions Defendants[2]

Honey Solutions is an industrial honey supplier structured as a Texas limited partnership with a principal place of business in Texas. HHI is the general partner of Honey Solutions. From 2003 to May 2008, Douglas A. Murphy ("Murphy") was the Director of Sales at Honey Solutions. In that role, Murphy was responsible for the wholesale purchase of honey, maintaining relationships with honey suppliers, and the sale of honey in the United States. Murphy was also a principal and the managing member of HHI. In these positions, he exercised control over Honey Solutions and served as management's primary point of contact with Honey Solutions's customers regarding the company's policies and practices on food safety and the importation of honey.

Urbain Tran ("Tran") is a citizen and resident of California. Beginning in at least 2006, Tran served as an agent for Honey Solutions. Tran's responsibilities including locating and sourcing honey for Honey Solutions. To carry out his responsibilities, Tran brokered transactions in which Honey Solutions purchased Chinese-origin honey from shell companies that were controlled by Chinese honey producers, including AHCOF USA, Inc., Bo Bay

---

[2] Defendant Urbain Tran submitted a notice to join the Honey Solutions defendants' motion to dismiss the class complaint. *See* ECF No. 165. The court's ruling on the Honey Solutions defendants' motion to dismiss applies equally to defendant Tran.

Corporation, Chengda Trading Inc., Glory Spring Enterprise Co., Ltd., Pineco Import/Export Ltd., SilverSpoon International, Inc., and Sweet Campo Co., Ltd. ("Sweet Campo").

In June 2011, an undercover law enforcement agent took the role of director of procurement at Honey Solutions as part of an ongoing investigation into the illicit importation of Chinese honey. *See* Press Release, Dep't of Justice, Two Companies and Five Individuals Charged with Roles in Illegal Honey Imports, Avoided $180 Million in AntiDumping Duties 1 (Feb. 20, 2013), *available at* http://www.justice.gov/usao/iln/pr/chicago/2013/pr0220_02.html ("Press Release"). Based on information obtained during this investigation, the United States Attorney for the Northern District of Illinois initiated criminal proceedings against Murphy and Honey Solutions in February 2013. Murphy and Honey Solutions were charged with violating the federal Food, Drug, and Cosmetic Act for purchasing "discounted Polish-origin honey containing the prohibited antibiotic Chloramphenical from Alfred L. Wolff USA in 2006." (Class Compl. ¶ 41) (quoting Press Release at 2.) On February 20, 2013, Honey Solutions entered into a deferred prosecution agreement with the United States government and admitted to, *inter alia*, (a) purchasing Chinese-origin honey from "seven shell and front companies that were controlled by various Chinese honey producers and manufacturers," (b) processing and selling adulterated honey, and (c) defrauding its downstream customers. *Id.* Also on February 20, 2013, Murphy consented to a plea agreement. Murphy pled guilty for the role he played in introducing honey that was unlawfully adulterated with intent to defraud and mislead.

### B. Sunland

Sunland is a privately-held wholesale honey import corporation. It is incorporated in Connecticut and has a principal place of business in Connecticut.

The class plaintiffs allege that Sunland knowingly sold contaminated honey of Chinese origin to another defendant in this matter, Groeb Farms, Inc. ("GFI"), on several occasions between 2008 and 2010. From September 2008 to April 2010, Sunland allegedly used labels indicating that its honey was made in Vietnam, the Ukraine, India, and Brazil, when the honey actually came from China. The batches of Chinese honey that Sunland sold to GFI were found to contain antibiotics that the Food and Drug Administration ("FDA") has prohibited or strictly regulated for use in any food products in the United States, including chloramphenicol, fluoroquinolone, and norfloxacin. On at least one occasion, however, GFI rejected Sunland's tender of purportedly non-Chinese honey because it contained lead. The class plaintiffs allege that this shipment of honey must have originated from China because "[b]eekeepers in China are well-known for using large, unlined, lead-soldered metal drums which leaches [sic] the lead into the honey." (Class Compl. ¶ 214.) In 2010, United States Customs allegedly imposed a $500,000 duty upon Sunland, after finding that Sunland sold honey that had entered the United States illegally from China in 2008 as "Vietnamese Honey." (*Id.* ¶ 220.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory

allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Any fraud-based allegations, such as allegations of fraud in a civil RICO claim or a Lanham Act claim, must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  S*ee Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *Goren v. New Vision Int'l , Inc.*, 156 F.3d 721, 726 (7th Cir. 1998); *Vertical Web Media, LLC v. Etailinsights, Inc.*, 14-cv-3220, 2014 WL 2868789, at *4 (N.D. Ill. June 24, 2014) (applying Rule 9(b) to a Lanham Act claim that "sound[ed] in fraud").  A plaintiff alleging fraud must provide the time, place, and content of the alleged false representations, the method by which the representations were communicated, and the identities of the parties to those representations. *Slaney*, 244 F.3d 580, 597 (7th Cir. 2001).  However, the Seventh Circuit has "cautioned" that "the exact level of particularity that is required will necessarily differ based on the facts of the case." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).  Thus, in some instances, a plaintiff with a "good-faith belief in the allegations [he or she] make[s]" may plead a fraud claim on "information and belief." *Beyrer*, 722 F.3d at 948.  But this "practice is permissible" only if "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Id.* (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011)).

III.    ANALYSIS

### A.  Honey Solutions Defendants' Motions to Dismiss

The Honey Solutions defendants move to dismiss all claims brought against them.  The court addresses the class plaintiffs' and individual plaintiffs' RICO claims first and then the class plaintiffs' Lanham Act claims against these defendants.

### i.  RICO Claims

### 1.  Alleged Violation of 18 U.S.C. § 1962(c)

Both the class complaint and the individual plaintiffs' complaint assert a claim against the Honey Solutions defendants under Section 1962(c).  However, the private right of action for a violation of Section 1962(c) emanates from 18 U.S.C. § 1964(c).  *RWB Servs., LLC v. Hartford Computer Grp.*, Inc., 539 F.3d 681, 685 (7th Cir. 2008) ("The civil RICO cause of action arises under 18 U.S.C. § 1964(c).").   The court thus begins its analysis of the asserted Section 1962(c) violation by assessing whether the plaintiffs may proceed under Section 1964(c).  *Id.*

Section 1964(c) provides:

> "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. . . ."

18 U.S.C. § 1964(c).  "A cause of action under § 1964(c) requires a plaintiff to plead '(1) an injury in its business or property (2) by reason of (3) the defendants' violation of section 1962.'" *DeGuelle v. Camilli*, 664 F.3d 192, 198 (7th Cir. 2011) (quoting *RWB Servs.*, 539 F.3d at 685 (internal quotation marks and brackets omitted)).

The Honey Solutions defendants assert that neither the class plaintiffs nor the individual plaintiffs can proceed with their Section 1962(c) claim because both groups of plaintiffs have failed to allege that their respective injuries occurred "by reason of" the alleged RICO violations.

To satisfy the "by reason of" requirement under Section 1964(c), a plaintiff "must prove, among other things, that 'the pattern of racketeering activity' both factually and proximately caused [the alleged] 'injur[y].'" *RBW Servs.*, 539 F.3d at 686 (quoting *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268, (1992)). "In examining whether a RICO violation proximately caused the plaintiff's injury, 'the central question . . . is whether the alleged violation led *directly* to the plaintiff's injuries." *RBW Servs.*, 539 F.3d at 688 (quoting *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006) (emphasis added)).

The Supreme Court's decision in *Anza* is instructive. The plaintiff, a seller of steel mill products, alleged that the defendant, its competitor, defrauded the state of New York by failing to charge "sales tax to cash-paying customers." *Anza*, 547 U.S. at 454. "This practice allowed [the defendant] to reduce its prices without affecting its profit margin." *Id.* The defendant then "submitted fraudulent tax returns to the New York State Department of Taxation and Finance in an effort to conceal" the misconduct. *Id.* Even though the defendant's lower "prices had the foreseeable effect of hurting the plaintiff's business," the Court found that "the 'direct victim of [the defendant's] conduct [was] the State of New York,' not the plaintiff." *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 733 (7th Cir. 2014) (citing *Anza*, 547 U.S. at 458). The cause of the plaintiff's harm, the Court reasoned, was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Anza*, 547 U.S. at 458. Whether the defendant defrauded the state in order to "gain a competitive advantage over" the plaintiff was "immaterial." *Id.* at 460. As the "direct victim" of the defendant's "conduct was the State of New York, not [the plaintiff]," the plaintiff's Section 1962(c) claim failed to satisfy the proximate cause requirement under Section 1964(c). *Id.* at 458, 461.

*Anza* compels the dismissal of both the class plaintiffs' and the individual plaintiffs' Section 1962(c) claims as pled. In both complaints, the alleged 1962(c) violation is the fraud the Honey Solutions defendants perpetrated on U.S. authorities. (*See* Class Compl. ¶ 298 (alleging that all of the defendants "engaged in and/or continue to participate in an open-ended scheme to (a) illegally transship honey originating in China (and possibly other unlawful source countries), including honey containing adulterated antibiotics, through intermediate countries to the United States, (b) *defraud Government import authorities* by misrepresenting that the Chinese-origin honey (i) originated in countries other than China and/or (ii) was not honey, but other products, including sugars and syrups so as to avoid paying antidumping duties, (c) dump, market, sell, and distribute the illegally imported and fraudulently declared Chinese-origin honey throughout the United States, (d) undercut and damage their competition (i.e. Plaintiffs and the other Class members), and (e) substantially depress the price of honey legitimately produced, packed, marketed, and sold in the United States") (emphasis added) *and* Individual Pls.' Compl. ¶ 139 ("Plaintiffs were damaged (and will continue to be damaged) by the Honey Solutions Executives' and HHI's (i) illegal importation and *fraudulent false declaration of Chinese-origin honey* wrongfully dumped on the United States honey market (on which the Government relied) that substantially depressed the price of honey legitimately produced, packed, marketed, and sold in the United States, and (ii) the earnings and profits Plaintiffs would have earned on the sales of their honey but for the Honey Solutions Executives' and HHI's above-described wrongful acts.") (emphasis added).) As these allegations illustrate, the class complaint and the individual plaintiffs' complaint advance the same theory of Section 1962(c) liability: that the Honey Solutions defendants gained a competitive edge by fraudulently avoiding customs duties and passing on the cost savings to customers via lower prices.

*Anza* rejected this theory of liability. "A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Anza*, 547 U.S. at 460. Yet, that is the exact RICO claim being made in this case. Both sets of plaintiffs seek redress under Section 1962(c) based on the Honey Solutions defendants' market-driven purpose in avoiding duty payments. (*See* Class Compl. ¶ 299 ("[H]oney Solutions defendants . . . devised, instigated, perpetrated, and executed, and/or continue to devise, instigate, perpetrate, and execute, the scheme by engaging in the above-described repeated, related, and systemic mail fraud and/or interstate and/or foreign wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, pursuant to which they repeatedly defrauded and/or conspired to defraud Government authorities by misrepresenting that the Chinese-origin honey (a) originated in countries other than China and/or (b) was not honey, but other products, including sugars and syrups—to the financial benefit of themselves and possibly others and to the financial detriment of Plaintiffs and the other Class members.") *and* Individual Pls. Compl. ¶ 140 ("The Honey Solutions Executives and HHI knew their tactics, misrepresentations and unlawful actions were fraudulent, misleading, and illegal, and would cause Plaintiffs to suffer damages in the form of, inter alia, business destruction, lost profits, lost business opportunities . . . .").)

Pursuant to *Anza*, neither the class plaintiffs nor the individual plaintiffs have adequately pleaded the requirement of proximate causation. Their claims for violation of Section 1962(c) are thus dismissed.

### 2. Alleged Violation of 18 U.S.C. § 1962(d) Through Conspiracy to Violate 18 U.S.C. § 1962(c)

The class complaint and individual plaintiffs' complaint allege that the Honey Solutions defendants conspired to violate Section 1962(c) in violation of Section 1962(d). "[S]ection

1962(d) makes it 'unlawful for any person to conspire' to violate any other subsection of section 1962." *RWB Servs.*, 539 F.3d at 685 (quoting 18 U.S.C. § 1962(d)).

As set forth above, however, neither group of plaintiffs has sufficiently pled that the Honey Solutions defendants violated Section 1962(c). Consequently, the plaintiffs "cannot state a claim for conspiracy under § 1962(d) based on those same facts. . . ." *United Food & Commer. Worker Unions & Emplrs. Midwest Health Bens. Fund v. Walgreen Co.*, 719 F.3d 849, 856-57 (7th Cir. 2013) (citing *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000)); *Patel v. Mahajan*, No. 11 cv-4545, 2012 U.S. Dist. LEXIS 109755, at *12 (N.D. Ill. Aug. 6, 2012) ("When a § 1962(c) claim fails, a § 1962(d) claim premised on the same facts fails as well."). The class plaintiffs' and individual plaintiffs' claims under Section 1962(d) for conspiring to violate Section 1962(c) are thus dismissed.

### 3. Alleged Violation of 18 U.S.C. § 1962(d) Through Conspiracy to Violate 18 U.S.C. § 1962(a)

Count V of both the class complaint and the individual complaint is a claim for violation of Section 1962(d) based on a conspiracy to violate 18 U.S.C. § 1962(a). Section 1962(a) provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . *to use or invest*, directly or indirectly, any part of such income, or the proceeds of such income, in . . . the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).

"A section 1962(a) claim requires a showing that a defendant: (1) received income from a pattern of racketeering activity; (2) used or invested that income in the operation of an enterprise; and (3) caused the injury complained of by the use or investment of racketeering income in an enterprise." *Rao v. BP Prods. N. Am.*,

Inc., 589 F.3d 389, 398 (7th 2009). "This provision was primarily directed at halting the investment of racketeering proceeds into legitimate businesses, including the practice of money laundering." *Kane v. Bank of Am., N.A.*, No. 13-cv-8053, 2014 U.S. Dist. LEXIS 117973, at *8 (N.D. Ill. Aug. 25, 2014) (quoting *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3rd Cir. 1991)); *see also Vicom v. Harbridge Merchant Servs.*, 20 F.3d 771, 779 n.6 (7th Cir. 1994) ("[T]he majority of circuits hold that the use or investment of the racketeering income must proximately cause the plaintiff's injury; injury caused by the predicate racketeering acts is inadequate.").

The class plaintiffs' and individual plaintiffs' claims against the Honey Solutions defendants for conspiring to violate Section 1962(a) in violation of Section 1962(d) fail because no allegation in either complaint suggests (a) that the Honey Solutions defendants invested proceeds from transshipping in another enterprise, or (b) that the plaintiffs "suffered an injury caused by the use or investment of racketeering income." *Rao*, 589 F.3d at 399. For these reasons, Count V is dismissed in both complaints.[3]

### ii. Lanham Act Claims

In Counts I and II of the class complaint, the class plaintiffs assert claims against the Honey Solutions defendants for violations of the Lanham Act, 15 U.S.C. § 1125(a), for false advertising and unfair competition. The Honey Solutions defendants move to dismiss the class plaintiffs' Lanham Act claims on three grounds.[4]

---

[3] Additionally, Count V in the class complaint is deficient against Sunland because the class plaintiffs have inadequately alleged Sunland's involvement in a RICO enterprise. *See infra* at 21; *Haynes v. City of Chi.*, No. 12-cv-2980, 2014 U.S. Dist. LEXIS 151106, at *4-5 (N.D. Ill. Oct. 22, 2014) (dismissing Section 1962(a) claim for failure to plead the existence of an enterprise).

[4] In their memorandum in support of their motion to dismiss, the Honey Solutions defendants offered a fourth basis for dismissing the class plaintiffs' Lanham Act claims, but abandoned it in

First, the Honey Solutions defendants argue that the class plaintiffs have failed to allege their Lanham Act claims in accordance with Federal Rule of Procedure 9(b). The Honey Solutions defendants correctly point out that Lanham Act claims sounding in fraud must comport with the heightened pleading standard of Rule 9(b). *See Slaney*, 244 F.3d at 597 (7th Cir. 2001); *Vertical Web Media*, 2014 WL 2868789, at *4. But the class plaintiffs have more than adequately pled the Honey Solutions defendants' role in the fraudulent transshipping scheme. As alleged in the class complaint, the Honey Solutions defendants purchased discounted honey of Chinese origin and resold it as honey of non-Chinese origin beginning in 2006 and possibly earlier. (Class Compl. ¶¶ 33, 35.) The class plaintiffs identify the Chinese shell companies from whom the Honey Solutions defendants purchased the illicit honey. (*Id.* ¶ 35.) The class plaintiffs also incorporate the admissions that Honey Solutions and Murphy—the Director of Sales at Honey Solutions and a principal and managing member of HHI—made in their agreements with U.S. prosecutors. (*See Id.* ¶¶ 32-34, 164-171.) By representing to potential buyers that the honey originated from non-Chinese sources, the Honey Solutions defendants benefitted from the importing defendants' deception of U.S. Customs officials. (*Id.* ¶¶ 166, 167, 254-283.) The Honey Solutions defendants then extended the deception to the domestic marketplace for commercial honey by repeating the misrepresentations to potential buyers. (*Id.*) These allegations sufficiently "provide the [Honey Solutions defendants] with a general outline

---

their reply memorandum. The Honey Solutions defendants argued that the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, precluded the class plaintiffs' Lanham Act claims. However, after the Honey Solutions defendants moved to dismiss, the United States Supreme Court in *Pom Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2241 (2014) held that "the FDCA and the Lanham Act complement each other in the federal regulation of misleading labels" and that the FDCA does not preclude Lanham Act suits. Subsequently, the Honey Solutions defendants submitted a notice to "withdraw their invocation of the Ninth Ciruit's decision in *Pom Wonderful.*" *See* ECF No. 179. The court construes the Honey Solutions defendants' notice of withdrawal and failure to address the arguments that the class plaintiffs made in their opposition brief as a waiver of the fourth proffered basis for dismissal.

of how the alleged fraud scheme operated and of their purported role in the scheme." *Mougrabi v. Covenant Air & Water, LLC*, No. 05-cv-1615, 2005 WL 2230178, at *2 (N.D. Ill. Sept. 8, 2005).

Second, the Honey Solutions defendants contend that the 2004 repeal of the Anti-Dumping Act of 1916 precludes the class plaintiffs from predicating a Lanham Act claim on the alleged avoidance of customs duties. This argument, however, mischaracterizes the class plaintiffs' Lanham Act claims. Unlike their RICO claims, the class plaintiffs' Lanham Act claims derive from the misleading labels and advertising that the Honey Solutions defendants marketed to "[a]ctual and potential purchasers"—not from the deceptive customs forms that importers propounded on U.S. officials. (*See* Class Compl. ¶¶ 255-258, 264, 266, 278-281.) Moreover, the only case the Honey Solutions defendants offer to support their position, *S/N Precision Enterprises, Inc. v. Axsys Technologies, Inc.*, No. 05-cv-371, 2005 WL 2614776 (N.D.N.Y. Oct. 14, 2005), supports the denial of their motion to dismiss the class plaintiffs' Lanham Act claims. The court in *S/N Precision Enterprises* denied the defendant's motion to dismiss based on the allegation that the defendant "falsely designated the origin of [the goods at issue] in connection with the importation of those goods into the United States *and the subsequent sale of those goods to consumers in the United States*." *Id.* at *6 (citing the complaint) (emphasis in original). The court concluded that these allegations were "sufficient to state a claim," since "[t]here may be facts that, in fact, [d]efendant engaged in commercial speech that was sufficiently disseminated to the relevant purchasing public for the purpose of influencing purchasing decisions." *Id.* As similar facts may be present here, the class plaintiffs' Lanham Act claims may go forward against the Honey Solutions defendants.

Third, the Honey Solutions defendants assert that the class plaintiffs' Lanham Act claims are untimely. In their original complaint filed on April 18, 2013, the class plaintiffs alleged that their Lanham Act claims stem from a conspiracy to transship honey that began in 2002 and possibly earlier. (*See Adee Honey Farms v. Groeb Farms, Inc.*, No. 13-cv-2922, Original Class Compl. ¶¶ 58, 113, ECF No. 1.) The class plaintiffs now seek redress for the harm they have suffered since 2001, including decreased sales and market share. (Class Compl. ¶ 237.) The Honey Solutions defendants contend that the class plaintiffs knew or should have known of their injury when their sales began to decline as the price of honey fell, which undisputedly occurred more than three years ago.[5] In assessing the timeliness of the class plaintiffs' Lanham Act claims, the Honey Solutions defendants insist that "the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim." (Honey Solutions Defs.' Br. at 23) (quoting *Cancer Foundation, Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 71, 674 (7th Cir. 2009).)

The class plaintiffs counter that their claims are timely because the Honey Solutions defendants "continuously concealed their fraudulent conduct over the course of the illegal transshipping scheme. . . ." (Class Pls.' Opp. Br. at 32.) Under the doctrine of fraudulent concealment, the statute of limitations is tolled "during a period in which the defendant has taken steps to prevent the plaintiff from filing his complaint until the statute of limitations expires." *Arroyo v. United States*, 656 F.3d 663, 678-79 (7th Cir. 2011). "A defendant takes active steps to mislead when, for example, it hides evidence or promises not to plead the statute of

---

[5] The Honey Solutions defendants posit that the limitations period applicable to a Lanham Act claim is three years. (Honey Solutions Defs.' Br. at 23.) The class plaintiffs do not dispute this statement of the law.

limitations." *Arriaga v. Wells Fargo Bank, N.A.*, No. 09-cv-2115, 2011 WL 4738522, at *3 (N.D. Ill. Sept. 30, 2011).

The court at this point credits the class plaintiffs' allegations of fraudulent concealment, rendering their claims timely. From 2002 to January 2013, the period in which various government authorities were investigating the commercial honey market, the Honey Solutions defendants allegedly worked with Chinese shell companies to transship honey illegally. The Honey Solutions agent, Urbain Tran, allegedly cooperated with the shell companies to falsify import entry documents and use fraudulent transactional documents, including "bills of lading, invoices, packing lists, country of origin certificates, and other papers." (Class Compl. ¶ 168.) The class plaintiffs did not have access to any of these documents and could not have known of the Honey Solutions defendants' involvement in the transshipping operation until February 2013, when the U.S. government brought charges against Honey Solutions and Murphy. The filing of those charges triggered the limitations period by alerting the class plaintiffs for the first time of the Honey Solutions defendants' involvement in the transshipping scheme. Thus, because the class plaintiffs filed suit only a month later, in April 2013, the court agrees that the class plaintiffs' Lanham Act claims may well be timely.

### iii. Common Law Claims

The Honey Solutions defendants move to dismiss the individual plaintiffs' state law claims for negligent misrepresentation and unjust enrichment. In response, the individual plaintiffs argue that they sufficiently pled these two claims under Illinois law, citing to pertinent authority from the Illinois appellate courts. The Honey Solutions defendants do not discuss the individual plaintiffs' state law claims in their reply brief. By abandoning the arguments they advanced in their opening memorandum, the Honey Solutions defendants have waived those

arguments. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond

to an argument . . . results in waiver."). The court therefore assumes that the individual

plaintiffs' arguments are meritorious for pleading purposes. The Honey Solutions defendants'

motion to dismiss is denied as to Counts X and XI of the individual plaintiffs' complaint.

### B. Sunland's Motion to Dismiss the Class Complaint

The class plaintiffs allege that Sunland committed three violations of RICO under 18

U.S.C. § 1962(c) (Count III) and 18 U.S.C. § 1962(d) (Counts IV and V). These are the same

claims that the court has already found deficiently pled against the Honey Solutions defendants.

Because the same reasoning applies here, the claims are also dismissed as to Sunland.

Sunland, however, offers an additional basis to dismiss the class plaintiffs' RICO claims.

The court evaluates this basis in case repleading would make it pertinent. The court also

addresses Sunland's objection to the court's exercise of personal jurisdiction.

### i. Count III: Alleged Violation of Section 1962(c)

Section 1962(c) makes it "unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a

claim under Section 1962(c), a plaintiff must plead "(1) conduct (2) of an enterprise (3) through

a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 496

(1985).

Sunland moves to dismiss the class plaintiffs' Section 1962(c) claim for failure to allege a

RICO enterprise. Under the statute, an "enterprise" is defined as "any individual, partnership,

corporation, association, or other legal entity, and any union or group of individuals *associated in fact* although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added).

The class plaintiffs contend that they have adequately alleged Sunland's membership in an association-in-fact enterprise. In *Boyle v. United States*, 556 U.S. 938, 944 (2009), the Supreme Court described the key "structural features" of an 'association-in-fact' enterprise as (1) a purpose, (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *United Food & Commer. Worker Unions & Emplrs. Midwest Health Bens. Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (quoting *Boyle*, 556 U.S. at 946). However, this definition of an association-in-fact enterprise "is not limitless." *Walgreen Co.*, 719 F.3d at 853. "Section 1962(c) requires a plaintiff to identify a 'person'--*i.e.*, the defendant--that is distinct from the RICO enterprise." *Id.* And, critically, "that 'person' must have 'conducted or participated in the conduct of the '*enterprise's* affairs,' not just [the person's] own affairs." *Id.* (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original)).

Sunland contends that the Seventh Circuit's *Walgreen Co.* decision counsels that the class plaintiffs have insufficiently pled Sunland's involvement in a RICO enterprise. In *Walgreen Co.*, the plaintiff, an employee benefit fund, sued Walgreen Company ("Walgreens") and two pharmaceutical companies ("Par") under RICO for fraudulently overcharging the fund and its participants for drug prescriptions. *Walgreen Co.*, 719 F.3d at 850. Walgreens and other insurance providers allegedly "fill[ed] prescriptions for several generic drugs with a dosage form that differed from, and was more expensive than, the dosage form prescribed to the customer." *Id.* The fund claimed that it had sufficiently pled a RICO enterprise under *Boyle*. *Id.* at 854. Specifically, the fund alleged that Walgreens and Par: conspired to profit illegally by

"substituting Par's more expensive dosage forms [for certain drugs] for the cheaper dosage forms actually prescribed" (a common purpose); communicated extensively, evident in "Walgreen's implementation of the illegal dosage-form-switching program using Par's pills" (relationship); and conducted the program from 2001 to 2004 (longevity). The fund further alleged that Par referred to the program as "Walgreens/Par/Hrp" in a PowerPoint presentation to Walgreens, thus suggesting that Walgreens and Par internally understood the existence of a separate "Hrp enterprise." *Id.*

The Seventh Circuit, however, determined that the fund failed to "plausibly alleg[e] the type of concerted activity undertaken on behalf of an identifiable enterprise necessary to a successful RICO claim." *Id.* at 850-51. Although the fund identified communications between Walgreens and Par, "nothing in the complaint reveal[ed] how one might infer that these communications or actions were undertaken on behalf of the *enterprise* as opposed to on behalf of Walgreens and Par in their individual capacities, to advance their individual self-interests." *Id.* (emphasis in original). In particular, the complaint did not allege that "officials from either company involved themselves in the affairs of the other." *Id.* "Nor [did] the complaint anywhere suggest that profits from the illegal drug-switching scheme were siphoned off to the Hrp enterprise or to individual enterprise members." *Id.* at 855. Rather, "the activities the complaint describe[d] [were] entirely consistent with Walgreens and Par each going about its own business, with Par manufacturing generic drugs and marketing its products to pharmacies, and Walgreens purchasing drugs and filling prescriptions." *Id.*

The class plaintiffs here have similarly failed to allege that Sunland conducted the affairs of an association-in-fact enterprise, "as opposed to [Sunland's] own affairs." *Id.* at 854. The alleged enterprise in this case consists of all of the named defendants "and other entities involved

in the illegal transshipment, mislabeling, and importation of mislabeled 'honey' into the United States." (Class Compl. ¶ 289.) But beyond this general allegation aimed at every defendant, the only Sunland-specific allegations indicate that Sunland conducted business solely on its own behalf. According to the class complaint, Sunland knowingly sold or attempted to sell Chinese honey mislabeled as "Vietnamese honey," "Indian honey," "Ukrainian honey," and "Brazilian honey" to GFI on numerous occasions between 2008 and 2011. (*Id.* ¶¶214-219.) Sunland made these sales even though the honey it was selling often contained poisonous contaminants or antibiotics that the FDA prohibited for use in food consumption. (*Id.*) The class plaintiffs further allege that Sunland "continues to import, supply, and/or sell illegally transshipped honey in the United States," even after U.S. officials fined Sunland $500,000 for selling Chinese-produced honey as "Vietnamese honey" in 2008. (*Id.* ¶ 220.)

None of these allegations provide a basis to infer that Sunland sold transshipped honey for any reason other than Sunland's own interest. The class plaintiffs' theory is that the transshipping scheme could not have occurred but for the fraudulent importation of Chinese honey by importers such as Sunland. But the class complaint lacks allegations from which the court can infer that Sunland imported illicit honey "on behalf of [an] *enterprise* as opposed to on behalf of" Sunland. *Walgreen Co.*, 719 F.3d at 854 (emphasis in original). Rather, "the activities the complaint describes are entirely consistent with [Sunland] and [GFI] each going about its own business, with [Sunland importing honey], and [GFI packing and reselling it]." *Id.* at 855. At bottom, the "type of interaction" between Sunland and GFI that the class plaintiffs allege—a commercial sale of honey by an importer to a packer/supplier—"shows only that [Sunland and GFI] had a commercial relationship, not that they had joined together to create *a distinct entity* for purposes of" fraudulently transshipping honey. *Id.* (emphasis added).

The complaint also suffers from other deficiencies relating to Sunland's involvement in an enterprise. To begin with, there is no allegation in the class complaint that an agent or employee of any defendant or other party ever "involved" itself in Sunland's affairs. *Id.* at 854. Nor is there any allegation that Sunland shared profits from its honey sales with GFI or another entity involved in the transshipping operation. *Id.* at 855. And whereas the complaint in *Walgreen Co.* alleged that Walgreens and its business partner "regularly communicated" to commit fraud, the class complaint contains no allegations that Sunland and GFI maintained such communications. To the contrary, the class plaintiffs allege that GFI *rejected* a honey shipment from Sunland, after GFI discovered that the honey contained an unsafe amount of lead. This allegation belies the notion that Sunland and GFI worked together on behalf of a distinct enterprise or for each other. Thus, even if an association-in-fact enterprise existed, the class plaintiffs have failed to allege that Sunland ever participated in it, much less conducted its affairs. *See Id.* at 554-55.

Accordingly, the class plaintiffs' claim under is Section 1962(c) is also dismissed against Sunland for failure to plead Sunland's involvement in an "enterprise."

### ii. Personal Jurisdiction

The class plaintiffs assert that Sunland is subject to the jurisdiction of this court on two grounds. One is RICO, which permits nationwide service of process. *See* 18 U.S.C. § 1965(b); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th 1987) ("§ 1965(b) creates personal jurisdiction by authorizing service. Service of process is how a court gets jurisdiction over the person."). However, the class plaintiffs offer no authority for the proposition that a plaintiff may serve a non-resident defendant pursuant to Section 1965(b), when the underlying RICO claims are invalid. *See, e.g., Cox v. Sherman Capital LLC*, No. 12-cv-01654, 2014 U.S. Dist. LEXIS

43147, at *7 n. 2 (S.D. Ind. Mar. 31, 2014) ("[T]he Court has determined that the Plaintiffs failed to adequately allege their claims under RICO. Therefore, the Plaintiffs must show that they otherwise have personal jurisdiction over the remaining Entity Defendants.").

The class plaintiffs argue in the alternative that the court has personal jurisdiction over Sunland pursuant to the Illinois long-arm statute. 735 ILCS 5/2-209. "When personal jurisdiction is governed by the law of the forum state, '[t]he court's exercise of jurisdiction over the defendant must be authorized by the terms of the forum state's personal-jurisdiction statute and also must comport with the requirements of the Fourteenth Amendment's Due Process Clause.'" *HR Props. of Del. LLC v. Adams & Reese LLP*, No. 11-cv-8638, 2013 U.S. Dist. LEXIS 33615, at *15 (N.D. Ill. Mar. 12, 2013) (quoting *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012)).

Here, the class plaintiffs specifically invoke the "catch-all" provision of the Illinois long-arm statute, which provides that "[a] court may [ ] exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). "[W]hen subsection (c) is invoked . . . it constitutes an independent basis for exercising personal jurisdiction that effectively collapses the jurisdictional inquiry into the single issue of whether a defendant's Illinois contacts are sufficient to satisfy federal and Illinois due process." *Russell v. SNFA*, 987 N.E. 2d 778, 785 (Ill. 2013), *cert den.*, 134 S. Ct. 295 (2013). A plaintiff satisfies this burden by showing that the defendant has "purposefully established 'minimum contacts' in the forum State" such that it is 'not unreasonable to require [the defendant] to submit to the burdens of litigation in that forum.'" *Smith v. Jefferson County Bd. of Educ.*, 378 Fed. Appx. 582, 585 (7th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-76 (1985)).

In this case, there is no indication that Sunland has had any contact with Illinois, let alone sufficient contacts for the court to impose jurisdiction upon it. Sunland supports its motion to dismiss by attaching a declaration from its president and owner, Nicholas Sargeanston.[6] Sargeanston avers that all of Sunland's four employees work at the company's headquarters and sole office in Connecticut. (Sargeanston Decl. ¶ 10.) Sargeanston further avers that Sunland has never had an office or agent in Illinois, been registered to do business or done business in Illinois, paid taxes in Illinois, or owned assets in Illinois. (*Id.* ¶ 11.) Sunland sends the honey it imports to warehouses outside Illinois or directly to its customers, and Sunland has not had a customer in Illinois in over 15 years. (*Id.* ¶¶ 13-18.) Sunland has never filed suit in Illinois. (*Id.* ¶ 19.) Other than this case, Sunland has never been sued in Illinois. (*Id.*) Sunland advertises only through its website, and its website merely "merely gives contact information; orders cannot be placed through it." (Sunland Mem. of Law at 13) (citing Sargeanston Decl. ¶ 20.)

The class plaintiffs do not refute any of these factual averments.[7] Nor did they move for leave to take jurisdictional discovery upon receiving Sunland's motion to dismiss and the

---

[6] The court "may 'receive and weigh' affidavits and other evidence outside the pleadings" to determine whether a defendant is subject to personal jurisdiction. *See SEC v. Brown*, No. 14-cv-6130, 2015 U.S. Dist. LEXIS 25787, at *7-8 (N.D. Ill. Mar. 4, 2015) (quoting *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.")).

[7] In a footnote, the class plaintiffs claim that "the Illinois long-arm statute confers jurisdiction over Sunland in two additional ways—under 735 ILCS 5/2-209(a)(1) (transacting business within Illinois) and (a)(2) (commission of a tortious act within Illinois)." (Pls. Opp. Br. at 39 n.19.) But the only allegations the class plaintiffs offer to support this claim are that Sunland participated in the illegal transshipping operation, along with all of the other defendants, "throughout the United States." (*Id.*) This sort of conclusory allegation is insufficient to overcome Sunland's specific, uncontested averments showing that it has had no purposeful contact with the state of Illinois. *See GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009) ("[W]e accept as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff."). In addition, the court would be

accompanying declaration from Sargeanston.  As a consequence, the court must resolve whether Sunland is subject to personal jurisdiction based on the present record.

The class plaintiffs argue that, even if their allegations fail to show Sunland has had the requisite minimum contacts with Illinois, the court still may exercise jurisdiction over Sunland pursuant to the "conspiracy theory" of personal jurisdiction.  "Under this theory, a court may assert jurisdiction over all of the co-conspirators, both resident and non-resident, based on their involvement in a conspiracy which occurred within the forum."  *United Phosphorus, Ltd. v. Angus Chem. Co.*, 43 F. Supp. 2d 904, 912 (N.D. Ill. 1999.)

Sunland replies that the class plaintiffs exclusively rely on case law predating 2007, and that since then, Illinois courts and the Seventh Circuit have abandoned the conspiracy theory as a basis for personal jurisdiction.  As the Seventh Circuit stated in *Smith v. Jefferson County Bd. of Educ.*, 378 Fed. Appx. 582, 585-86 (7th Cir. 2010),

> The idea behind [the conspiracy] theory is that personal jurisdiction is proper over an out-of-state defendant in a forum where one of his co-conspirators has acted as the defendant's agent in furtherance of the conspiracy. See, *e.g., Davis v. A&J Electronics,* 792 F.2d 74, 75-76 (7th Cir. 1986), citing *Textor v. Board of Regents of Northern Illinois University,* 711 F.2d 1387, 1392-93 (7th Cir. 1983). The first problem with this argument is that the theory may not be valid in Illinois. See *Ploense v. Electrolux Home Products, Inc.,* 377 Ill. App. 3d 1091,   882 N.E.2d 653, 666, 317 Ill. Dec. 773 (Ill. App. Ct. 2007) (stating that an Illinois Supreme Court case "effectively scuttl[ed]" the theory); *Knaus v. Guidry,* 389 Ill. App. 3d 804, 906 N.E.2d 644, 659-61, 329 Ill. Dec. 446 (Ill. App. Ct. 2009) (noting the "articulated hesitancy of our supreme court . . . to adopt the conspiracy theory of jurisdiction in Illinois"). Even if it were viable, the theory would not permit a plaintiff to draw a defendant into court in Illinois simply by alleging a conspiracy that includes some Illinois defendants and some out-of-state defendants, while making no effort to connect the two. That stretch would take well beyond the bounds of Illinois law and the bounds of federal due process a theory that is already marginal at best. See *Ploense,* 882 N.E.2d at 667-

---

justified in ignoring the class plaintiffs' attempt to invoke Section 209(a)(1)-(2) in a footnote. *See Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) ("[A] party can waive an argument by presenting it only in an undeveloped footnote.").

68 (questioning whether conspiracy theory of personal jurisdiction meets federal minimum contacts requirement); *Knaus,* 906 N.E.2d at 662-63 (same).

Against this backdrop, the court does not see how it could use the conspiracy theory to bring Sunland within the court's jurisdiction. Setting aside the fact that Illinois courts now disfavor the theory, the class plaintiffs have insufficiently alleged Sunland's involvement in a conspiracy that touches Illinois. The class plaintiffs generally allege "*Defendants*[] participat[ed] in a RICO conspiracy and in a conspiracy to violate the Lanham Act." (Pls. Opp. Br. at 40) (citing Class Compl. ¶¶ 53, 172, 173, 214-221, 229, 231, 267, 269) (emphasis added).) This general averment, however, "is not enough to establish that [Sunland] purposefully availed [itself] of the benefit of Illinois's laws or should have expected to be called into Illinois's courts." *Smith*, 378 Fed. Appx. at 586.

Finally, in their opposition brief, the class plaintiffs request jurisdictional discovery to see if Sunland has committed acts that would bring it within the reach of the Illinois long-arm statute. "Although it is within the discretion of the district court to allow a plaintiff to conduct limited discovery in order to establish that jurisdiction exists, a court is not obligated to so allow when the plaintiff fails to make even a prima facie case that jurisdiction exists." *Sanderson v. Spectrum Labs, Inc*., No. 00-1872, 2000 U.S. App. LEXIS 34058, at *10-11 (7th Cir. Dec. 29, 2000) (citing *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted.")).

The class plaintiffs have not established a colorable basis to obtain jurisdictional discovery from Sunland. The class plaintiffs' primary ground supporting the court's personal jurisdiction over Sunland was the nationwide service of process provision under

RICO. *See* 18 U.S.C. § 1965(b). With their RICO claims dismissed, the class plaintiffs rely entirely on general allegations tying Sunland to Illinois because the transshipping scheme affected honey sales "throughout" the United States. These general allegations are insufficient to rebut the declaration from Sunland's representative that Sunland has not had the type of meaningful contacts necessary to confer jurisdiction over Sunland.

Moreover, a request for jurisdictional discovery buried in a response brief, rather than presented properly as a motion, guarantees that the request will not come to the court's attention until the court is fully engaged in deciding the motion to dismiss. At that point, the request comes too late. There is an appropriate way to request discovery, but that is not what the class plaintiffs have done here. *See Nelson v. Bulso*, 149 F.3d 701, 705-06 (7th Cir. 1998) (affirming district court's denial of plaintiff's request for jurisdictional discovery that was made via a "motion for leave to file a surreply brief"). Sunland is therefore dismissed for lack of personal jurisdiction.[8]

## IV.    CONCLUSION

For the reasons stated above, Sunland's motion to dismiss the class complaint is granted. All claims in the class complaint are dismissed without prejudice as to Sunland. The Honey Solutions defendants' motions to dismiss the class complaint and the individual plaintiffs' complaint are granted in part and denied in part. Specifically, Counts III, IV, and V of the class complaint are dismissed without prejudice as to the Honey Solutions defendants and defendant Urbani Tran. Counts II, V, and VIII of the individual plaintiffs' complaint are dismissed without prejudice as to the Honey Solutions defendants and defendant Urbani Tran.

---

[8] Because Sunland is dismissed for lack of personal jurisdiction, the court need not resolve the arguments that Sunland raises in opposition to the class plaintiffs' Lanham Act claims.

ENTER:


_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

DATED:   March 31, 2015