**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| HONEY TRANSHIPPING LITIGATION | ) | Hon. Joan B. Gottschall |
| | ) | |
| | ) | |
| | ) | Case No. 13-CV-02905 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.   BACKGROUND .................................................................................................... 2

II.  STATEMENT OF FACTS ..................................................................................... 4

     A.   REASONS FOR SETTLEMENT ...................................................................... 7

     B.   TERMS OF THE PROPOSED SETTLEMENTS ............................................... 8

     C.   CLASS NOTICE ......................................................................................... 11

III. ARGUMENT ........................................................................................................ 12

     A.   SEVENTH CIRCUIT STANDARDS REGARDING PRELIMINARY APPROVAL ............... 13

          1.   The Strength of Class Plaintiffs' Case Measured Against the
               Settlements Supports Preliminary Approval ............................................ 15

          2.   The Complexity, Length, and Expense of Continued Litigation If
               the Settlements Are Not Approved Supports Preliminary Approval ........ 17

          3.   The Lack of Opposition To The Settlements Supports Preliminary
               Approval ................................................................................................ 18

          4.   The Lack of Collusion in Gaining the Settlements Supports
               Preliminary Approval ............................................................................. 18

          5.   The Stage Of The Proceedings And The Amount Of Discovery
               And Investigation Completed When The Settlements Were
               Achieved Supports Preliminary Approval ................................................ 20

     B.   CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE
          23(B)(3) FOR SETTLEMENT PURPOSES IS APPROPRIATE ........................................ 20

          1.   The Settlement Class Satisfies Rule 23(a) ............................................. 21

               a.   Numerosity ................................................................................ 22

               b.   Commonality .............................................................................. 22

               c.   Typicality ................................................................................... 23

               d.   Adequacy ................................................................................... 23

          2.   The Settlement Class Meets The Requirements Of Rule 23(b)(3) ........... 25

               a.   Predominance ............................................................................. 25

               b.   Superiority ................................................................................. 26

     C.   THE PROPOSED CLASS NOTICE IS ADEQUATE ..................................................... 27

CONCLUSION ............................................................................................................... 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ............................................... 22

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .......................................................... 20, 21

*Armstrong v. Bd of Sch. Directors of the City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ........................................ 12, 13, 18

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ............................................ 16

*In re Bank One Sec. Litig./Chicago S'holder Claims*,
  00 CV 0767, 2002 U.S. Dist. LEXIS 8709 (N.D. Ill. May 9, 2002) .................... 22

*In re Bromine Antitrust Litig*,
  203 F.R.D. 403 (S.D. Ind. 2001) ........................................... 13

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio 2001) ...................................... 15

*Butler v. Am. Cable & Tel., LLC*,
  Case No. 09 CV 5536, 2011 WL 2708399 (N.D. Ill. July 12, 2011) ................. 13

*Cannon v. Texas Gulf Sulphur Co.*,
  55 F.R.D. 308 (S.D.N.Y. 1972) ............................................ 15

*In re Capital One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................... 13, 14

*Carson v. American Brands, Inc.*,
  450 U.S. 79 (1981) ....................................................... 13

*In re Cendant Corp. Secs. Litig.*,
  109 F. Supp. 2d 235 (D.N.J. 2000) ........................................ 15

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ............................................... 22

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
  410 F. Supp. 659 (D. Minn. 1974) ......................................... 15

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ............................................................... 15

*Culver v. City of Milwaukee,*
    277 F.3d 908 (7th Cir. 2002) ............................................................... 25

*DeBoer v. Mellon Mtg. Co.,*
    64 F.3d 1171 (8th Cir. 1995) ............................................................... 15

*In re Domestic Air Transp. Antitrust Litig.,*
    141 F.R.D. 534 (N.D. Ga. 1992) ........................................................... 28

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
    89 F.R.D. 87 (S.D.N.Y. 1981) ............................................................ 26

*Ebersohl v. Bechtel Corp.,*
    No. 09-1029-GPM, 2010 WL 2266736 (S.D. Ill. June 7, 2010) ........................ 24

*EEOC v. Hiram Walker & Sons, Inc.,*
    768 F.2d 884 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) ........... 13, 15, 17

*Gautreaux v. Pierce,*
    690 F.2d 616 (7th Cir. 1982) ......................................................... 3, 12, 14

*General Elec. Capital Corp. v. Lease Resolution Corp.,*
    128 F.3d 1074 (7th Cir. 1997) ....................................................... 14, 16, 17

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    855 F. Supp. 825 (E.D.N.C. 1994) ........................................................ 13

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) .......................................................... *passim*

*Lipton v. Chattem, Inc.,*
    289 F.R.D. 456 (N.D. Ill. 2013) .......................................................... 24

*Mars Steel v. Continental Ill. Nat'l Bank & Trust,*
    834 F.2d 677 (7th Cir. 1987) ............................................................. 18

*Mashburn v. Nat'l Healthcare Inc.,*
    684 F. Supp. 660 (M.D. Ala. 1988) ....................................................... 27

*McDaniel v. Univ. Fid. Corp.,*
    No. 04 C 2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004) .............. 21

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ..................................................................... 29

*In re Northfield Labs., Inc. Secs. Litig.*,
    Case No. 06-1493, 2012 U.S Dist. LEXIS 88667 (N.D. Ill. June 26, 2012) ........................ 24

*Pella Corp. v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010) *reversed on other grounds by Eubank v. Pella
    Corp.*, 753 F.3d 718 (7th Cir. 2014) .................................................................. 25

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)......................................................................................... 26

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ........................................................................... 28

*In re RJR Nabisco, Inc. Secs. Litig.*,
    MDL No. 818 (MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992).................................. 15

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ......................................................................... 23

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ........................................................................... 23

*UAW v. GMC*,
    497 F.3d 615 (6th Cir. 2007) ........................................................................... 16

*Williams v. First Nat'l Bank of Pauls Valley*,
    216 U.S. 582 (1910)......................................................................................... 12

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ........................................................................... 14

## Statutes

Lanham Act, 15 U.S.C. § 1125(a) ............................................................... *passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ............... *passim*

## Other Authorities

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
    and Procedure § 1778 (2d ed. 1986) ............................................................. 25, 26

3B J.W. Moore, Moore's Federal Practice (2d ed. 1996) ¶23.80[2.1].......................... 12

Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.27 (3d ed.
    1992) ................................................................................................ 12

1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:10 (4th ed. 2002) ...................... 23

Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010) ............................................. 3, 12

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Plaintiffs Richard L. Adee doing business as Adee Honey Farms; Bill Rhodes Honey Company, LLC; Hackenberg Apiaries; Edward J. Doan doing business as Doan's Honey Farms; and Wee Bee Honey Inc. (collectively, "Class Plaintiffs"), by their undersigned counsel, respectfully submit this memorandum of law in support of their Motion for Preliminary Approval of Class Action Settlements ("Motion"). The terms of the class action settlements (the "Settlements") are set forth in the seven attached Class Action Settlement Agreements and Releases (the "Settlement Agreements") copies of which are attached hereto as Exhibits 1-7. Class Plaintiffs entered into these Settlement Agreements with defendants Honey Holding I, LTD, HHI Management, LLC, and Douglas A. Murphy (collectively, the "Honey Solutions Defendants") (Ex. 1); defendant Sunland Trading, Inc. (Ex. 2); defendant Odem International, Inc. (Ex. 3); defendants National Honey, Inc. and Jun Yang (Ex. 4); defendant Urbain Tran (Ex. 5); defendant Bees Brothers, LLC (Ex. 6); and defendant Ecotrade International, Inc. (Ex.7) (these eleven defendants are collectively referred to herein as the "Settling Defendants"). The Individual Plaintiffs have also reached their own Settlement Agreements with all of the Settling Defendants.

Furthermore, under the terms of Settlement Agreements with a subset of the Settling Defendants, Class Plaintiffs and Individual Plaintiffs have agreed to cause this entire action, including the Class Plaintiffs' and Individual Plaintiffs' individual claims against those few remaining defendants that have either avoided service or declined to enter appearances in this action as they appear to be no longer in business (specifically defendants Brightmin Enterprise, LLC, China Industrial Manufacturing Group, Mega Farm, Inc., Minnesota International Trading Co., Premium Food Sales, Inc., Silver Spoon International, Inc., and Texas Boga, Inc., collectively, the "Remainder Defendants"), to be dismissed with prejudice. As a result, should

the Court grant final approval to the Settlements discussed herein, this longstanding and hard fought litigation will come to an end.

## I.  BACKGROUND

This litigation arises from Class Plaintiffs' allegations that Settling Defendants and others engaged in a scheme to unlawfully import Chinese honey into the United States in violation of the Lanham Act, 15 U.S.C. § 1125(a), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO").  Specifically, Class Plaintiffs' Second Consolidated Amended Class Action Complaint (ECF 245, hereinafter, "Complaint") alleges that defendants – including Settling Defendants – conspired to illegally "transship" honey originating in China through intermediate countries into the United States and falsely represented that such honey originated from countries other than China in order to avoid paying antidumping duties that the United States government imposed on Chinese honey.  Plaintiffs alleged that, through their involvement in this scheme, Defendants and others were able to market, sell, and distribute fraudulently labeled Chinese-origin honey to businesses and persons throughout the United States, thereby depressing the domestic honey market and causing Class Plaintiffs and other domestic commercial honey producers and packers to suffer economic loss and financial harm.

If approved, these settlements will result in the total payment of seven hundred ninety-six thousand three hundred twelve dollars ($796,312) from Settling Defendants into a Settlement Fund (the "Settlement Fund"), that, after deductions for fees (including attorneys' fees and reasonable ligation expenses of up to, but not more than, 33 percent of the Settlement Fund, to the extent approved by this Court), class representative incentive awards, and settlement administration costs and expenses (the "Net Settlement Fund"), will be distributed to eligible Settlement Class members on a *pro rata* basis, based on the amount of honey each Settlement Class member produced or packed following a claims submission process.  In addition, certain

2

Settling Defendants will cooperate and/or continue to cooperate with Class Plaintiffs, as set forth in the Settlement Agreements, in investigating and prosecuting claims against potential co-conspirators that have not been named in any of the complaints in this litigation arising from or relating to honey transshipping, should this litigation continue as a result of some, but not all, Settlement Agreements achieving finality. In exchange for these monetary and non-monetary benefits, Settlement Class members, individually and on behalf of the Settlement Class, will generally release Settling Defendants and will dismiss this action with prejudice in its entirety.

The benefits provided by and through the Settlement Agreements represent a meaningful recovery of real value for Settlement Class members. The Settlements were reached after Class Counsel led a comprehensive investigation which included consultation with class members and other honey industry experts, a review of thousands of documents, aggressive motion practice in this Court, and over a year of arm's-length, good faith negotiations among the parties, including several rounds of in-person and telephonic settlement mediation conferences before the Hon. Mary M. Rowland, United States Magistrate Judge for the Northern District of Illinois.

Federal courts favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). With this principle in mind, the parties ask the Court to take the first step toward resolving this case – preliminarily approving the Settlements pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. As the Seventh Circuit has explained, the purpose of this "first step" is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing" after class members have been given an opportunity to opt-out of the class or to voice any objections to the settlement. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see generally* Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010) ("Manual"). Here, because the Settlements are a fair, reasonable, and adequate compromise in light of the merits of Class Plaintiffs' claims, Settling Defendants'

defenses, and the factual and legal risks of continued litigation through trial and a possible appeal, preliminary approval should be granted and notice disseminated to the proposed class members.

Thus, for the reasons set forth above and explained in more detail below, Class Plaintiffs respectfully request that the Court enter an Order, substantially in the form attached as Exhibit 8: (1) preliminarily approving the Settlement Agreements and entering the proposed order attached as Exhibit 8; (2) conditionally certifying the Settlement Class; (3) approving the proposed form and method of providing notice of the pendency of this action and the settlements to the Settlement Class and directing that notice be provided to the Settlement Class members; (4) scheduling a Fairness Hearing at which the Court can consider the request for final approval of the Settlements and entry of a proposed order and final judgment and setting forth procedures and deadlines related thereto; (5) staying claims against the Settling Defendants in this Court; and (6) issuing such other related relief as is just and proper.

## II.    STATEMENT OF FACTS

The United States consumes more honey than its bees produce. In order to meet market demand, large quantities of foreign honey are imported. Complaint, ECF 245 ¶ 87. China is a net exporter of honey. For a variety of reasons, including, but not limited to, the lower quality of Chinese honey and Chinese honey producers' use of pesticides, antibiotics, and fungicides that are banned in the United States, the market price of Chinese-produced honey was and is significantly lower than the market price of domestically produced honey. *Id.* at ¶ 89-90. In the early 1990s, large quantities of Chinese honey were being "dumped" into the U.S. market, causing significant financial harm and competitive distress to U.S. honey producers. *Id.* at ¶ 91. In response to complaints from domestic commercial beekeepers about the "dumping" of Chinese-honey into the U.S. market, and in light of the importance of the domestic honey

4

industry to U.S. agriculture overall, the United States Department of Commerce ("DOC")
launched two investigations that resulted in the imposition of significant import duties on
Chinese honey. *Id.* at ¶ 92-101.

After the DOC imposed antidumping duties, "official" Chinese honey exports to the
United States fell considerably. *Id.* at ¶ 103. However, dishonest honey brokers, importers,
shippers, and packers concocted a scheme – referred to as "honey laundering" or "transshipping"
– to avoid payment of U.S. antidumping duties and profit by importing falsely-labeled Chinese
honey into the United States while claiming that the honey originated from another country (such
as Vietnam or India) that was not subject to U.S. antidumping duties. *Id.* at ¶ 107. This
"transshipping" process illegally circumvents United States antidumping import duties and
substantially harms the domestic honey industry. *Id.*

Beginning in 2008, federal authorities, led by the U.S. Immigration and Customs
Enforcement's Home Security Investigations, initiated a phased investigation known as
"Honeygate." *Id.* at § E. The second phase of the Honeygate investigation resulted in charges
brought against two companies, Groeb Farms, Inc. ("GFI") and Honey Holdings 1, Ltd. d/b/a
Honey Solutions ("Honey Solutions"), and five individuals, including Douglas Murphy and
Urbain Tran, for their roles in avoiding more than $180 million in antidumping duties on Chinese
honey. *Id.* at § F.

In February 2013, while facing a potential criminal indictment, GFI entered into a
Deferred Prosecution Agreement with the United States Department of Justice ("DOJ") wherein
it accepted responsibility for its conduct and that of its current and former employees. GFI also
agreed to pay a $2 million fine, fully cooperate for two years, and destroy all illegal Chinese-
origin honey in its possession. Complaint, ECF 245 ¶ 139. Defendant Honey Solutions also
entered into a deferred prosecution agreement, wherein it accepted responsibility for its conduct

and that of its former employees and agents, and agreed to pay a $1 million fine and fully cooperate for two years. *Id* at ¶ 183.

In April 2013, following the public release of the GFI and Honey Solutions Deferred Prosecution Agreements, three class actions were filed in the Northern District of Illinois against honey producers and distributors, including GFI and Honey Solutions as well as several of their officers, directors, and managers, for their alleged role in transshipping. These actions were later consolidated. ECF 49.

From late 2013 through early 2015, Class Plaintiffs engaged in extensive settlement negotiations with GFI and its related entities to achieve the first Class Action Settlement in this case ("Groeb Settlement"). On March 12, 2015, the Court granted preliminary approval of the Groeb Settlement. ECF 230 and 236. Thereafter, Class Counsel followed the Court-approved notice procedure; Class Members were given an opportunity to object and opt-out; no class members objected or opted out; and, on October 2, 2015, the Court granted final approval of that settlement. ECF 400.

After granting preliminary approval of the Groeb Settlement, this Court ruled on the outstanding motions to dismiss that had been filed by the Honey Solutions Defendants, Sunland, and Urbain Tran. ECF 235. In that Order, the Court granted, without prejudice, Sunland's motion to dismiss the class complaint on personal jurisdictional grounds and both Sunland's and Honey Solutions' motions to dismiss the RICO Act Claims, but allowed Plaintiffs' Lanham Act claims against the Honey Solutions defendants and Urbain Tran to move forward. (*Id.* at ¶ IV). Plaintiffs, subsequently, filed a Second Consolidated Amended Complaint to plead additional jurisdictional facts and to amend their RICO claims against Sunland and the Honey Solutions Defendants. ECF 245. Plaintiffs also added allegations against additional defendants, including certain Settling Defendants, here: Douglas A. Murphy, Odem International, Inc., National

6

Honey, Inc., Jun Yang, Urbain Tran, Bees Brothers, LLC, and Ecotrade International, Inc. *Id*. After Plaintiffs filed the Second Amended Complaint, all Settling Defendants filed motions to dismiss the Second Amended Complaint and Plaintiffs filed oppositions. The Court has not yet ruled on these motions to dismiss.

After a Status Conference on October 2, 2015, the Court ordered Class Plaintiffs, Individual Plaintiffs, and Settling Defendants to participate in a settlement conference before the Honorable Magistrate Judge Mary M. Rowland. ECF 398. Over several months, the parties engaged in extensive, arm's-length negotiations over a potential settlement of all claims against Settling Defendants on a classwide basis. These negotiations culminated in several in-person and telephonic settlement conferences before Magistrate Judge Rowland, ultimately resulting in the Settlements memorialized in the Settlement Agreements that Class Plaintiffs present for preliminary approval.

### A. REASONS FOR SETTLEMENT

Every settlement is necessarily the result of a risk-benefit analysis that requires the parties to balance the merits of the claims and defenses asserted, the likelihood of successfully obtaining or defeating class certification, the chances of prevailing on the ultimate merits of the suit, the considerable burdens and risks of litigation, and the ability to successfully collect any judgment. Taking all of these factors into consideration, Class Plaintiffs have concluded that the benefits of settling Class Plaintiffs' claims outweigh the attendant risks of continued litigation including the expense and length of time necessary to see this matter through to trial, the uncertainties of litigation and the ability to collect any judgment entered against Settling Defendants, and the fact that resolution of the class claims, whenever and however determined, will likely be submitted for appellate review. Given these potential risks, Class Plaintiffs

determined that the substantial benefits afforded to the Settlement Class by the Settlements far outweighed the benefits of engaging in continued, protracted, and uncertain litigation.

Class Plaintiffs and their counsel believe that the Settlements are not only reasonable, but also are a favorable recovery for the Settlement Class because: (1) the Settlement Agreements create a Settlement Fund from which Settlement Class members who file valid claims may receive their *pro rata* share; (2) the Settlement Agreements mitigate the risks of uncertain recovery posed by continued litigation; and (3) certain Settlement Agreements require the Settling Defendant therein to provide non-monetary cooperation should the need to engage in continued litigation ever arise. Given the facts as laid out herein, this represents a positive result for Settlement Class members and merits preliminary approval, and, ultimately, final approval.

### B. TERMS OF THE PROPOSED SETTLEMENTS

The Settlement Agreements are the result of substantial arm's-length negotiations between Class Plaintiffs and Settling Defendants, by and through their respective counsel. The negotiations continued during and through the briefing of several defendants' motions to dismiss. No party has conceded the merits of their respective positions; on the contrary, Class Plaintiffs continue to view their claims as strong, legitimate, and credible.

The framework created by the Settlements will result in Settlement Class members recovering immediate, substantial, and certain relief. Despite the pendency of a decision on the current motions to dismiss, Settlement Class members will now, if the Settlements are approved, receive actual monetary relief for portions of the economic harm Class Plaintiffs allege was caused by Settling Defendants' participation in honey transshipping.

The Settlements generally provide that Settling Defendants will cause seven hundred ninety-six thousand three hundred twelve dollars ($796,312) to be paid into a settlement fund for the benefit of Settlement Class members. The settlement fund is non-reversionary and will be

distributed to Settlement Class members – after deductions for fees and reasonable litigation expenses and representative incentive awards as they may be approved by this Court, as well as Settlement Administration costs – on a *pro rata* basis. Each class members' *pro rata* share will be based on the amount of honey that Class Member produced and/or packed during the class period. To make a claim, each Settlement Class Member need only return a one-page claim form, signed under penalty of perjury, setting forth the total amount of honey that that Class Member produced and/or packed during the class period that includes affirmations that the Class Member had not imported, packed, or purchased fraudulently mislabeled Chinese origin honey, or assigned their claims (or, as noted below, rely on the claim form they already provided to the Settlement Administrator). The proposed Claim Form is attached hereto as Exhibit 11. Some Settlement Agreements require continued cooperation from certain Settling Defendants, as well.

In addition, Settlement Class Members who previously submitted claims forms to the Settlement Administrator in the claim administration process related to the prior partial settlement of claims in this Action that were previously determined to be valid by the Settlement Administrator will automatically have their claims forms considered by the Settlement Administrator in determining the *pro rata* distribution of the Net Settlement Fund obtained by these Settlements. In other words, the Settlement Class receiving benefits as a result of these newly agreed to Settlements will be at least as numerous as the Settlement Class in the prior settlement previously granted final approval, and Settlement Class members in the prior settlement need not resubmit their claim forms in order to receive their *pro rata* share of this newly created settlement fund.

Each of the proposed Class Plaintiffs took the initiative to commence this litigation, assisted in pre-suit as well as post-suit investigations, stayed apprised of case developments, and accepted personal risks and responsibilities individually and on behalf of others similarly

9

situated.  Following the first settlement with the Groeb defendants, Class Plaintiffs continued to be involved in this litigation and were essential to the continued prosecution of this action against the Settling Defendants here.  Therefore, subject to Court approval and in recognition of these efforts and risks, the Settlement Agreements also provide that Class Counsel may request the Court issue additional incentive awards for each Class Plaintiff of up to $1,000.  The requested incentive awards shall be paid out of the Settlement Fund.  *Id*. at ¶ 73.

The Settlement Agreements also provide that Class Counsel may request, for their services, attorneys' fees and reimbursement of reasonable litigation expenses based on a percentage (up to, but, not more than, 33 percent) of the Settlement Fund.  *Id*.  Class Counsel will file a detailed application for their attorneys' fees and costs prior to the fairness hearing, according to the schedule set forth by the Court in a Preliminary Approval Order.  Class Counsel anticipate that even with the previously approved attorneys' fees from the Groeb Settlement, should the Court award 33 percent of the fund as fees here, total fees awarded from all settlements will be considerably less than Counsel's collective lodestar resulting in a negative multiplier.

The specific contribution provided by each of the Settling Defendants under the Settlement Agreements is set forth in the table below:

10

| Settling Defendants | Consideration for Settlement |
|---|---|
| Honey Holding I, LTD.; HHI Management, LLC; and Douglas A. Murphy | Payment of a total of $620,000 in three installments of $206,667 on August 1, 2016; February 1, 2017; and August 1, 2017. Ex. 1, ¶47-50. |
| Sunland Trading, Inc. | Payment of $29,062. Ex. 2 ¶47-49. |
| Odem International, Inc. | Payment of $3,875 and specified cooperation as set forth in the Odem Settlement Agreement. Ex. 3 ¶47-49 |
| National Honey, Inc. and Jun Yang | Payment of $77,500 and specified cooperation as set forth in the National/Yang Settlement Agreement. Ex. 4 ¶47-49. |
| Urbain Tran | Payment of $19,375 and specified cooperation as set forth in the Tran Settlement Agreement. Ex. 5 ¶47-49. |
| Bees Brothers, LLC | Payment of $23,250 in three installments of $7,750; the first payment to be made within 7 days of the Preliminary Approval of the Settlement; the second to be made within 7 days of the final approval of the Settlement, and the third within 35 days of Final Approval of the Settlement, and specified cooperation as set forth in the Bees Brothers Settlement Agreement. Ex. 6 ¶47-49. |
| Ecotrade International, Inc. | Payment of $23,250. Ex. 7 ¶47-48. |

## C. CLASS NOTICE

The Settlement Agreements provide for a comprehensive plan by which notice of the Settlements will be disseminated to prospective Settlement Class members by U.S. mail, e-mail, a Settlement Website, and by publication in two honey industry trade periodicals of national circulation on different dates by a Settlement Administrator selected by Class Counsel. The Settlement Agreements require that Class Counsel provide the accessible contact information of potential class members to the Settlement Administrator, and, indeed, such contact information has already been provided in the prior Groeb Settlement. Based on consultations with industry participants, there are still believed to be approximately 2,000 potential Settlement Class members, the vast majority of whom are expected to be reached by the class notice efforts – particularly the website and the publication notice – set forth above.

### III.   ARGUMENT

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  There are three steps to the Court's analysis: (1) the Court must preliminarily approve the proposed settlement; (2) members of the settlement class must be given notice of the proposed settlement; and (3) a hearing must be held, after which the Court must decide whether the proposed settlement is fair, reasonable, and adequate. *See Gautreaux*, 690 F.2d at 621 n.3; Manual § 21.632.  "[C]ompromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 595 (1910).

It is well-established that there is an overriding public interest in settling litigation, and this is particularly true in class actions.  *See Isby v. Bayh*, 75 F.3d at 1196 ("Federal courts naturally favor the settlement of class action litigation."); *Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.").  In determining whether preliminary approval is warranted, the issue before the Court is whether the settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the settlement should be given to Class members, and a hearing scheduled to consider final settlement approval.  *See Armstrong*, 616 F.2d at 313, *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("The courts of appeals have required that district court approval of a settlement pursuant to Rule 23(e) be given only where the district finds the settlement fair, reasonable and adequate.").  The Court is not required at this point to make a final determination as to the fairness of the settlements.  *Isby*, 75 F.3d at 1198.  That decision is made only at the final approval stage, after notice of the settlements has been provided to settlement class members and they have had an opportunity to voice their views of the settlement.  *See* 3B J.W. Moore, Moore's Federal Practice (2d ed. 1996) ¶23.80[2.1] at 23-

479.  Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval.  *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Bromine Antitrust Litig*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low"); *see also Butler v. Am. Cable & Tel., LLC*, Case No. 09 CV 5536, 2011 WL 2708399, at *8 (N.D. Ill. July 12, 2011) ("Although the 'fair, reasonable, and adequate standard' and the factors used to measure it are ultimately questions for the fairness hearing, a more summary version of the same inquiry takes place at the preliminary phase.") (citations omitted).

Here, the Settlements are fair, reasonable, and adequate, and well within the range of possible approval, because they provide for substantial monetary and non-monetary benefits to Settlement Class members.  *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790  (N.D. Ill. 2015) ("[A] settlement is a compromise, and courts need not – and indeed should not – 'reject a settlement solely because it does not provide a complete victory to the plaintiffs.'  This is especially true when complete victory would most surely bankrupt the prospective judgment debtor.") (citation omitted).

A.    SEVENTH CIRCUIT STANDARDS REGARDING PRELIMINARY APPROVAL

As is the case with final approval, a court has wide discretion in making the first-stage determination of the appropriateness of a settlement.  *See Armstrong*, 616 F.2d at 313.  The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986); *Isby*, 75 F.3d at

1196-97.  Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate."  *Isby*, 75 F.3d at 1196.

The key question at this preliminary approval stage is whether the settlement is "within the range of possible approval."  *Gautreaux*, 690 F.2d at 621 n.3 (internal quotation marks omitted).  In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts 'in the light most favorable to the settlement,'" *Isby*, 75 F.3d at 1198-99 (citing *EEOC*, 768 F.2d at 888-89), and has identified several factors for analyzing whether a class action settlement should be given final approval including:

> 1. the strength of the plaintiffs' case on the merits measured against the terms of the settlement;
>
> 2. the complexity, length, and expense of continued litigation;
>
> 3. the amount of opposition to the settlement;
>
> 4. the presence of collusion in gaining a settlement;
>
> 5. the stage of the proceedings; and
>
> 6. the amount of discovery completed.

*General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also*, *e.g.*, *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (reiterating "longstanding guidance" of the relevant factors for determining fairness of class action settlement); *In re Capital One*, 80 F. Supp. 3d at 787-88 (same).  In weighing these factors, the district court should "recognize[] that the first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration."  *Isby*, 75 F.3d at 1199.

The Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," and so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *EEOC*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Consideration of these factors confirms that the proposed Settlements here are well "within the range of possible approval." Analysis of all of these factors weighs in favor of the Court preliminarily approving the Settlements.

### 1. The Strength of Class Plaintiffs' Case Measured Against the Settlements Supports Preliminary Approval

In the Complaint, Class Counsel made a strong case that Settling Defendants engaged in a conspiracy to transship Chinese-origin honey, depressed the domestic honey market, and violated the Lanham Act as well as RICO. (ECF 245). Class Plaintiffs believe they can establish Settling Defendants' liability at trial from this evidence, as well as from other evidence Class Plaintiffs would obtain through the course of formal discovery.

While Class Plaintiffs believe in the strength of their case, they must, however, acknowledge several factors that advise acceptance of these Settlements.[1] First, it is uncertain whether Class Plaintiffs and the proposed Settlement Class would be able to obtain a better

---

[1] Additionally, in considering a settlement, a court is required to take the parties' views into account. *DeBoer v. Mellon Mtg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("The views of the parties to the settlement must also be considered."); *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class.'") (citation omitted); *In re RJR Nabisco, Inc. Secs. Litig.*, MDL No. 818 (MBM), 1992 WL 210138, at *4 (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel"); *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1972) (the Court may consider the views of all involved counsel when deciding whether to approve a settlement). A corollary to this deferential level of scrutiny is the rule that "an individual who objects has a heavy burden of proving the settlement is unreasonable." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001) (citing cases); *see also In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").

outcome in this case against these Settling Defendants even after prevailing on a trial on the merits. Moreover, that recovery would be years in the future, at far greater expense to the Settlement Class. There is a significant risk that in continued litigation the Class would receive less or nothing at all if litigation proceeded to the bitter end, not only because of the risks of litigation, but also because of the solvency and jurisdictional risks.[2] As many of the Settling Defendants are small operations without significant assets, a victory that bankrupts them can be far less satisfying than a victory that provides meaningful and certain monetary relief in the here and now. *See*, *e.g.*, *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (affirming approval of settlement class and rejecting objections premised on prospect of plaintiffs complete victory on disputed issue because "any such victory would run the risk of being a Pyrrhic one . . . we need not embellish the point by raising the prospect of bankruptcy[.]").

Second, the sheer amount of time it will take to litigate the case to conclusion counsels in favor of accepting these Settlements now. *See Gen. Elec. Capital Corp.*, 128 F.3d at 1082; *see also In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (citations omitted). Under these Settlements, the Settlement Class will realize substantial and immediate benefits once the Settlements are approved and the claims process is completed. Members of the Settlement Class will each be entitled to their *pro rata* share of a settlement fund that will be distributed in full to class members following deductions for

---

[2] Indeed, GFI filed a Chapter 11 bankruptcy protection on October 1, 2013.

attorneys' fees, costs, and expenses that, pursuant to the terms of the Settlement Agreements, shall not exceed 33% of the fund.

Third, Settling Defendants have made clear that they intend to amount a vigorous defense to the Complaint. While Plaintiffs strongly believe that they could overcome any defenses, they cannot responsibly ignore the risk that this Court or a reviewing court might not accept some or all of their arguments. These litigation risks, coupled with the substantial material benefits the settlements will garner for Settlement Class members, weigh in favor of preliminary, and ultimately final, approval of the Settlements. *See Gen. Elec. Capital Corp.*, 128 F.3d at 1082.

Thus, the first factor – which the Seventh Circuit has reiterated is "the most important" one, *Isby*, 75 F.3d at 1199; *EEOC*, 768 F.2d at 889 – weighs strongly in favor of approving the Settlements because the putative class would receive substantial benefits despite arguments raised by in the pending motions to dismiss. As a factual matter, it is clear that illegal transshipping occurred and that importation of illegal transshipped honey is injurious to the domestic honey industry. Indeed, several individuals have received prison sentences because of their roles in honey transshipping conspiracies. But the legal questions, such as whether Settling Defendants' conduct gives rise to Lanham Act or RICO liability and whether some of them are subject to personal jurisdiction of this Court remain disputed.

In sum, when the challenges to success on the merits were this class action to be litigated further are balanced against the substantial benefits provided by the Settlements, these Settlements are easily within the range of possible approval. *Id.*

### 2. The Complexity, Length, and Expense of Continued Litigation If the Settlements Are Not Approved Supports Preliminary Approval

The proposed Settlements make a final decision on several disputed factual and legal issues unnecessary. Moreover, if the case is not settled, the expenses of continued litigation

would also be significant. Particularly, costs of testifying experts on the economic impact of honey transshipping, discovery, class certification, summary judgment motion practice, as well as other pre-trial, trial and likely appeal expenses, could be substantial. Correspondingly, in the event that the Court concludes that it cannot certify a nationwide class in a contested case, the likely result would be independent proceedings. Further, appeals could take years to resolve. These Settlements provide a reasonably prompt resolution with meaningful relief to all Settlement Class members without these additional major expenditures of time and money. This factor also weighs in favor of preliminary approval.

### 3. The Lack of Opposition To The Settlements Supports Preliminary Approval

At the current stage of the litigation, prior to the dissemination of the Class Notice, no members of the Settlement Class, including the named Plaintiffs, have indicated any objections to the proposed Settlements. In addition, no objections or other opposition was received to the prior Groeb Settlement. Class Counsel will revisit the issue of opposition at the fairness hearing to the extent necessary.

### 4. The Lack of Collusion in Gaining the Settlements Supports Preliminary Approval

Courts generally presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion in the absence of evidence to the contrary. *Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325. This presumption is applicable here. The Settlements were reached only after protracted (and often spirited) arm's-length negotiations by experienced counsel. These Settlements are not the result of collusion between the parties to trade the rights of absent class members for a large fee award for class counsel. To the contrary, notwithstanding impediments to recovery by the class, the Plaintiffs and Settling Defendants

18

have reached Settlements that result in all Settlement Class members receiving certain and immediate benefits.  In addition, the Settlements were only achieved with the able assistance of Magistrate Judge Rowland who helped all the parties – Class Plaintiffs, Individual Plaintiffs, and Settling Defendants – come to terms through extensive telephonic and in-person mediation sessions.

Although this case had not progressed to the class certification stage before negotiations began, the Seventh Circuit has made clear that there is nothing untoward about "settlement discussions [that] beg[i]n at an early stage in the litigation" of a class action.  *Isby*, 75 F.3d at 1200 (approving settlement).  This point is all the more acute here, in light of the bankruptcy proceedings and solvency issues encountered by the Groeb defendants that were parties to the prior settlement, the challenges faced in reaching the Settlements with defendants who are natural persons who have limited personal resources and who have already served criminal sentences as a result of the conduct described in the Complaint, and the difficulties involved in litigating against defendants located in far flung domestic jurisdictions and one foreign country.

Moreover, and as also noted above, the negotiations were difficult and protracted, extending over several months.  The parties benefitted from the assistance of the Hon. Mary Rowland, United States Magistrate Judge who played a crucial role in assisting the parties to bridge their differences.

Finally, Class Plaintiffs were kept apprised of the negotiations and have consented to the Settlements.  The Settlements are thus not the product of collusion in any way.

Accordingly, this factor also weighs in favor of preliminary approval.

**5. The Stage Of The Proceedings And The Amount Of Discovery And Investigation Completed When The Settlements Were Achieved Supports Preliminary Approval**

Class Counsel conducted a detailed investigation into the facts and law relating to the matters alleged. Moreover, the Settlements come after Class Plaintiffs consulted with their clients and other industry experts on the honey industry and the impact of transshipping on honey industry participants. Class Plaintiffs, through their counsel, conducted informal discovery concerning the size of the Class, the economic impact of transshipping. Significantly, Class Plaintiffs carefully analyzed over 50,000 pages of crucial discovery material provided by the Groeb defendants (referred to as the "DOJ Documents") as a result of the prior settlement that helped Class Plaintiffs evaluate, expand, and assess their allegations, as well as the strengths and weaknesses of their case, against the Settling Defendants.

Actual pending litigation – rather than the mere threat of litigation – informed the negotiations. For the past several months, Plaintiffs and their counsel conducted intensive arm's-length negotiations with Settling Defendants, numerous telephonic conferences, and the exchange of numerous written proposals, and days of negotiation before the magistrate judge. Furthermore, Class Plaintiffs have responded to multiple rounds of motions to dismiss. This stage factor thus weighs in favor of preliminary approval.

**B. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE 23(B)(3) FOR SETTLEMENT PURPOSES IS APPROPRIATE**

While a class must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619, 622 (1997). Indeed, the Supreme Court "has expressly approved the use of the settlement class device." *Id.* at 618 ("the 'settlement only' class has become a stock device"). Class Plaintiffs seek conditional certification of the Settlement Class under Rule 23(b)(3), their

appointment as Class Representatives, solely for purposes of the settlement, and re-appointment of their counsel as Class Counsel.[3]  A class may be certified if it satisfies all of the requirements of Rule 23(a) and one of the three subparagraphs of Rule 23(b), *see McDaniel v. Univ. Fid. Corp.*, No. 04 C 2157, 2004 U.S. Dist. LEXIS 21320 (N.D. Ill. Oct. 20, 2004) (applying Rule 23 at preliminary approval stage), but without regard to whether the class would be manageable for trial. *See Amchem*, 521 U.S. at 620.

The proposed Settlement Class consists of: all individuals and entities with commercial beekeeping operations of 300 or more hives and packers of honey that produced and/or sold honey in the United States during the period from 2001 to the present.  The Settlement Class excludes: (a) counsel for the parties; (b) the Released Parties; (c) all persons and entities who validly request exclusion from the Settlement Class pursuant to the terms of the Agreements; (d) the Individual Plaintiffs; and (e) Defendants in the Class Action, their alleged coconspirators, respective parents, subsidiaries and affiliates, as well as any government entities, including the Court and its staff.  This is the same definition of the Settlement Class this Court previously approved with respect to the prior Groeb Settlement.  As was the case with Groeb, this class meets the four prerequisites of Rule 23(a) necessary for class certification: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).  In addition, the class satisfies the requirements of Rule 23(b)(3): predominance of common issues and superiority of a class action.

### 1.    The Settlement Class Satisfies Rule 23(a)

Fed. R. Civ. P. 23(a) establishes four prerequisites to certification of any class: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) the claims

---

[3] Certification for settlement purposes is common in connection with settlements reached before a class certification ruling for litigation purposes has been made.  *See* Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.27. (3d ed. 1992).

raise common questions of law or fact ("commonality"); (3) the claims or defenses of the proposed representatives are typical of those of the class ("typicality"); and (4) the representative parties can fairly and adequately protect the interests of the class ("adequacy"). The proposed Settlement Class here satisfies each of these prerequisites. Settling Defendants have agreed to certification of the Settlement Class solely for purposes of the Settlements. If the Court does not finally approve the Settlements, Settling Defendants have reserved their rights to oppose class certification.

### a. Numerosity

Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable." "When class size reaches substantial proportions . . . , the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996) (*citing* 1 H. Newberg & A. Conte, Newberg on Class Actions, § 3.01, at 3-4 (3d ed. 1992)). The members of the proposed Settlement Class are sufficiently numerous under Rule 23(a)(1) because joinder of Settlement Class members, who are geographically dispersed, would be impracticable. *See In re Bank One Sec. Litig./Chicago S'holder Claims*, 00 CV 0767, 2002 U.S. Dist. LEXIS 8709, at *9 (N.D. Ill. May 9, 2002); *see also, Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed when there are more than forty (40) class members).

Here, there are approximately two thousand commercial beekeeping operations in the United States that have suffered economic loss, through depressed market prices, as a result of transshipping. *See* CAC ¶ 60. Thus, the numerosity requirement is easily satisfied.

### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality focuses on the relationship of common facts and legal issues among class

members.  1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:10 at 271 (4th ed. 2002).

The commonality requirement is easily met here.  "A common nucleus of operative fact is

usually enough to satisfy the commonality requirement of Rule 23(a)(2)."  *Rosario v. Livaditis,*

963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted); *accord Suchanek v. Sturm Foods, Inc.*,

764 F.3d 750, 756 (7th Cir. 2014).  Here, all Settling Defendants are alleged to have participated

in a common conspiracy to illegally import, market, and distribute Chinese-origin honey without

payment of antidumping duties, resulting in common depression of domestic honey prices to the

common detriment of other honey industry participants.  The issues of whether each Settling

Defendant is liable for violations of the Lanham Act and RICO, as well as the extent of the

economic harms resulting therefrom, are also common to all members of the Settlement Class.

### c.      Typicality

 Rule 23(a)(3) requires that the representative plaintiffs' claims be typical of those of the

claims of the other settlement class members.  A "plaintiff's claim is typical if it arises from the

same event or practice or course of conduct that gives rise to . . . the same legal theory."

*Rosario*, 963 F.2d at 1018 (*quoting De La Fuente v. Stokely-VanCamp, Inc.,* 713 F.2d 225, 232

(7th Cir. 1983)).  Here, the Class Plaintiffs' claims arise from the same alleged practices and

conduct by Settling Defendants with respect to transshipping as do the claims of the other

Settlement Class members and Settling Defendants' alleged conduct pertaining to proof of

liability would not differ among Settlement Class Members.  Accordingly, the Class Plaintiffs'

claims are typical of the claims of the other Settlement Class members.

### d.      Adequacy

Finally, Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the

interests of the class."  The adequacy standard involves two elements: one relates to the

adequacy of the named plaintiffs' representation of the class and requires that there be no

conflict between the interests of the representative and those of the class in general; the other relates to the adequacy of class counsel's representation. *See Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 459 (N.D. Ill. 2013) citing *Gomez v. St. Vincent Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011).

As to the first element, "it is clear that adequacy of representation is established when no collusion is shown between the representative and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of his duty." *Ebersohl v. Bechtel Corp.*, No. 09-1029-GPM, 2010 WL 2266736, at *2 (S.D. Ill. June 7, 2010) (*quoting Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

None of these disqualifying factors is present here. Class Plaintiffs' interests are aligned with all Settlement Class members, as they all suffered from the same market depressing effects caused by Settling Defendants' alleged illegal honey transshipping. Class Plaintiffs have no interests antagonistic to the other Settlement Class members' interests and each has fulfilled its duty to the Settlement Class by remaining informed of the negotiations with Settling Defendants and approving the Settlements prior to any discussion with Settling Defendants regarding any compensation that they may receive. The Settlements provide that each of the Class Plaintiffs in the Actions may apply for an incentive award of up to $1,000 in recognition of the further efforts they made and risks they undertook in connection with the litigation after the conclusion of the Groeb Settlement. These awards are reasonable in light of the overall benefits conferred on the Settlement Class stemming from these additional Settlement Agreements. *See, e.g., In re Northfield Labs., Inc. Secs. Litig.*, Case No. 06-1493, 2012 U.S Dist. LEXIS 88667 (N.D. Ill. June 26, 2012) (approving class action settlement and incentive award of $10,000 to each named plaintiff).

Second, Plaintiffs have retained counsel who are qualified and experienced to litigate this action. Class Counsel have represented plaintiffs in numerous class action cases over the past decades, including class actions involving agricultural commodities, and are respected firms involved in complex litigation. Moreover, Class Counsel exhibited the desire and expertise to vigorously prosecute this class action and to successfully negotiate a compromise of such litigation. *See Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) (discussing, in the context of the Rule 23(a)(4) "adequacy" analysis, the importance of Class Counsel's advocacy of the proposed settlement). In addition, Class Plaintiffs' attorneys have been described by this Court as "accomplished lawyers who have significant experience with class actions" and "best qualified to serve as interim co-lead class counsel to represent the interests of the putative class in this consolidated action" in the Court's August 9, 2013 order designating them as interim co-lead class counsel. *See* ECF 57 at 3-4.

### 2. The Settlement Class Meets The Requirements Of Rule 23(b)(3)

In addition to satisfying Rule 23(a), the Settlement Class satisfies the certification requirements of, and therefore should be certified under, Rule 23(b)(3).

#### a. Predominance

Rule 23(b)(3) requires that a plaintiff show that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." The predominance requirement may be satisfied when "the central questions in the litigation are the same for all class members." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) *reversed on other grounds by Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014). Class action status is appropriate where common questions represent a significant aspect of a case and they can be resolved in a single action. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary

Kay Kane, Federal Practice and Procedure § 1778, at 528 (2d ed. 1986). Common questions, however, need not be dispositive of the entire action, because to "predominate" under the rule does not mean to be "determinative." *Id.* at 528-29. Courts generally focus on the liability issue, and if the liability issue is common to the class, common questions are held to predominate over individual questions. *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

As previously noted, the central issues in this litigation are the extent and nature of Settling Defendants' involvement in honey transshipping and applicability of Class Plaintiffs' legal theories to Settling Defendants' conduct. These common issues predominate. Because these core issues are common to all members of the Settlement Class, the Rule 23(b)(3) predominance requirement is satisfied.

### b.    Superiority

Rule 23(b)(3) also requires that the Court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority requirement is necessarily comparative; by its own terms, Rule 23(b)(3) requires the Court to consider other possible means of resolving the claims of the class. Possible alternatives to the class action device include: joinder, intervention, consolidation, a test case, and an administrative proceeding. 2 Newberg (4th ed. Supp. 2010), supra, § 4.27. None of those alternatives is superior to class action treatment of these Settlements precisely because the class consists of thousands of commercial honey producers and packers. While the total amount of economic harm imposed by transshipping is large, each individual Settlement Class members' damages is relatively small compared to the costs of litigation, and individual litigation could be inefficient. "Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate

individually . . . most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

In sum, the Settlement Class's claims satisfy the Rule 23(b)(3) requirements, and should be certified.

### C. THE PROPOSED CLASS NOTICE IS ADEQUATE

Notice requirements are governed by both Rule 23(c)(2)(A), which states that "the Court may direct appropriate notice to the Class", and Rule 23(c)(2)(B) which states that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e)(1) similarly directs that "[t]he court must direct notice in a reasonable manner to all class members who would be bound" by "a proposed settlement, voluntary dismissal, or compromise." Here, the methods of notice are outlined in the Settlement Agreements and are similar to those this Court previously approved. In addition, the form of the Class Notice is attached hereto as Exhibits 9, 10, and 11. The method and form of notice meets all of the requirements of Rule 23.

The Class Notice satisfies Rule 23's directives and the due process clause requirements because the Settlement Class will be alerted to and informed about the Settlements, their rights, and their opportunity to appear and be heard at the Fairness Hearing. *See Mashburn v. Nat'l Healthcare Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988). Here, the parties propose an extensive notice campaign, designed to reach as many Settlement Class members as possible. Several individual members of the Settlement Class members can be identified through reasonable effort from accessible contact information that Class Plaintiffs have provided to the Settlement Administrator, enabling direct postal and email notice to members of the Settlement Class. Furthermore, the honey production and packing industry has a relatively small number of

participants, the vast majority of whom can be informed of this settlement through publication in popular and widely read trade publications. This combination of direct notice and publication in trade publications, along with maintenance of a settlement website, is a highly effective means of ensuring that members of the Settlement Class learn of the Settlements and their rights.

As to the content and form of the notice, Rule 23(c)(2)(B) provides that the notice to a Rule 23(b)(3) class must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and, the binding effect of a class judgment on class members under Rule 23(c)(3). Where notice is sent in connection with a proposed settlement, it must also inform class members of the terms of the settlement and their options with respect thereto. *See In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 553-555 (N.D. Ga. 1992). The proposed Class Notice here describes the nature, history, and status of the Action; sets forth the definition of the Settlement Class; states the Class' claims and issues; informs members of the Settlement Class of the right to exclude themselves from the settlement class, as well as the deadline and procedure for doing so; and, warns of the binding effect of the settlement approval proceedings. The Notice also describes the Settlements, states the parties' disagreement over liability and damages, sets out the attorneys' fees and expenses that Class Counsel intend to seek in connection with final settlement approval, provides contact information for Class Counsel, and summarizes the reasons the parties are proposing the settlements. In addition, to assure full compliance with *Redman v. RadioShack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014) and Fed. R. Civ. P. 23(h), the notice informs Settlement Class members that Class Counsel's detailed motion for an award of attorneys fees and expenses will be posted on the Settlement Website and made

available for Settlement Class members review prior to the expiration of the opt-out and objection deadlines. Finally, the Notice outlines the date, time, and place of the Fairness Hearing, and the procedures for commenting on the settlement and appearing at the Hearing. The Notice, therefore, is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The Notice set forth in the Settlement Agreements fulfill all requirements of adequate notice and should be duly approved.

## **CONCLUSION**

For all of the foregoing reasons, Class Plaintiffs, by their counsel, respectfully submit that the Court should preliminarily approve the Settlement Agreements; enter the proposed order granting preliminary approval; preliminary certify the Settlement Class; conditionally certify Class Plaintiffs as representatives thereof; appoint Class Plaintiffs' counsel as Class Counsel; approve the manner and form of notice to be furnished to Settlement Class members; approve the form of the claim form; and schedule a Fairness Hearing under Fed. R. Civ. P. 23(e)(1)(c) for the purpose of determining whether the Settlements are fair, reasonable, and adequate and, therefore, deserving of final approval.

Date:  May 20, 2016

Respectfully submitted,

/s/ *Adam J. Levitt*

Adam J. Levitt (ARDC #6216433)
Edmund S. Aronowitz (ARDC #6304587)
**GRANT & EISENHOFER, P.A.**
30 North LaSalle Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 214-0000
Facsimile: (312) 214-0001

Email: alevitt@gelaw.com
Email: earonowitz@gelaw.com

James J. Pizzirusso (admitted *pro hac vice*)
Kristen M. Ward (admitted *pro hac vice*)
**HAUSFELD, LLP**
1700 K Street N.W. Suite 650
Washington, D.C. 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: jpizzirusso@hausfeldllp.com
Email: kward@hausfeldllp.com

***Co-Lead Class Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2016, a copy of the foregoing was filed electronically using the Court's CM/ECF system.

/s/ *Edmund S. Aronowitz*
Edmund S. Aronowitz
